UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| MICHAEL GREENE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 6: 22-120-WOB |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On September 12, 2022, the United States filed a motion to dismiss the complaint filed by plaintiff Michael Greene. [R. 12] The Court promptly directed Greene to file a response by October 6, 2022. [R. 13] Two days before that deadline, Greene filed a motion requesting a 45-day extension of time to file his response, based upon the assertedly complex nature of the defenses presented in the dispositive motion. [R. 14] The Court granted Greene the full 45-day extension requested, and directed him to file his substantive response by November 21, 2022. In doing so, the Court expressly cautioned Greene:

> ... that this deadline will not be extended any further. And his failure to file a ***substantive response*** to the dispositive motion by this extended deadline will result in dismissal of this action for failure to prosecute and failure to comply with an Order of the Court. *Cf. Humphrey v. U.S. Attorney Gen. Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.").

[R. 15 (emphasis added)] Green has now filed, on the eve of the extended deadline, a handwritten amended complaint. [R. 16] The tendered amended complaint does not differ materially from Greene's original complaint. *See* [R. 1] And Greene did not file a substantive response to the dispositive motion as directed, and the deadline to do so has passed.

1

Greene's tendered amended complaint [R. 16] will be stricken from the record. Greene did not seek permission to file it, which is required at this juncture of the case. *See* Fed. R. Civ. P. 15(a)(2). And Greene, while he proceeds *pro se*, has sufficient experience litigating in the federal courts to be well aware of the applicable rules. *See Greene v. Buster*, No. 6: 20-CV-128-DLB-HAI (E.D. Ky. 2020) [R. 104 therein (March 8, 2022, Order denying motion to amend complaint and explaining the governing legal principles)]. Greene's litigation experience, which includes extensive pre-trial motion practice, would also have made plain to him that an amended complaint will not independently serve as a substantive response to a motion. *See id.*; *see also Kensu v. Mich. Dept. of Corr.*, No. 21-1802, 2022 WL 17348384, at *4 (6th Cir. Dec. 1, 2022) (noting that "issues addressed only in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (cleaned up) and *Greene v. USA*, No. 6: 19-CV-24-GFVT (E.D. Ky. 2019), *aff'd*, No. 21-05398 (Sept. 13, 2022). Greene has failed to file a substantive response to the motion of the United States as he was expressly directed to do. The Court will therefore dismiss Greene's complaint for failure to prosecute and failure to comply with an Order of the Court.

The United States' motion to dismiss Greene's complaint for lack of subject matter jurisdiction also appears to be well taken for the reasons set forth in its motion. As the Court previously explained, when a plaintiff fails to respond to a defendant's dispositive motion, whether under Civil Rule 12 or 56, the Court may grant the motion if the moving party has discharged his initial burden showing an entitlement to relief based upon the existing record. *Carver v. Bunch*, 946 F. 2d 451, 454-55 (6th Cir. 1991). Because Greene did not file a substantive response to the United States' motion, the Court accepts its factual assertions as true. *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404-05 (6th Cir. 1992) ("This burden to respond is really an opportunity

to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden - for example, by remaining silent - its opportunity is waived and its case wagered.").

Greene's complaint began with conclusory allegations that unnamed staff members employed by the Bureau of Prisons physically and sexually assaulted unnamed inmates on a routine basis. He then asserted that BOP attorney Joshua Billings and Assistant United States Attorney Callie Owen permitted staff to have access to security footage, and that they also provided advice to BOP staff members about how to hide and/or destroy evidence (including and video footage) of their misconduct. Greene alleged that they "assisted in the destruction, concealment of pertinent evidence relevant to the vindication of plaintiff's rights," but he made no allegations indicating what evidence was destroyed or explaining how and when the attorneys were involved. [R. 1 at 1-2]

Greene's complaint did include more specific allegations. He stated that in May 2019, the BOP "negligently" assigned officer Weiss to investigate Greene's allegation of misconduct against BOP officer Godsbury, despite the fact that the two officers were friends with one another. *Id*. at 3. Greene contended that as a result, in June 2019, BOP officers Buster, Gabbard, and Worley removed him from his cell and then physically and sexually assaulted him. Specifically, he stated that the officers threw him to the floor without justification, punched him in the face, and one of them put his finger in Greene's anus. He further complained that the officers intentionally fastened his restraints too tightly, causing injury, and that Lt. Salmon "negligently" permitted them to do so. *Id*. at 3-4. Salmon also refused to allow Greene to be taken to the medical department so that a rape kit could be used to test him, an act he characterized as negligence. [R. 1 at 4] Greene contended that all four officers engaged in an "abuse of process" by charging him with disciplinary offenses for his assertedly aggressive behavior. [R. 1 at 4-5] Greene asserted a wide variety of

3

claims including assault, battery, negligence, failure to protect, negligent supervision, sexual assault, and abuse of process, all pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. [R. 1 at 1, 5] The BOP rejected Greene's request for administrative settlement of his claims on November 23, 2021. [R. 1-1 at 1-2] Greene signed and dated his complaint May 19, 2022. [R. 1 at 5]

The government presents a facial attack upon the sufficiency of the allegations in Greene's complaint to establish subject matter jurisdiction. *See* [R. 12-1 at 5] The government concedes that while Greene's complaint pleads several intentional tort claims, the exception for intentional torts found in 28 U.S.C. § 2680(h) does not apply because the officers alleged to have committed them are law enforcement officers. *Id*. at 7-9. But it nonetheless contends that the actions alleged to have been committed by Buster, Gabbard and Worley – including the physical assault, the sexual assault, the excessive tightening of hard restraints, abuse of process, and intentional infliction of emotional distress – were committed outside the scope of their employment as BOP officers because they amounted to intentional torts. [R. 12-1 at 9-13] If so, claims based upon this conduct fall outside the purview of the FTCA, which waives sovereign immunity only for claims based upon "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *Flechsig v. United States*, 991 F. 2d 300, 302 (6th Cir. 1993).

The Court may decide the question, although raised in a motion to dismiss without the benefit of discovery, because "whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *L.C. v. United States*, No. 5:21-CV-00124-GFVT, 2022 WL 1179400, at *4 (E.D. Ky. Apr. 19, 2022) (*quoting RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125,

4

1143 (6th Cir. 1996)).  Kentucky law provides the relevant metric because the alleged misconduct occurred within the state.  *Id.* (*citing Williams v. United States*, 350 U.S. 857 (1955)).  As this Court has explained,

> Under Kentucky law, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment."  *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (*quoting Papa John's Int'l v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)).  An intentional tort committed by the employee may be within the scope of his or her employment if "its purpose, however misguided, is wholly or in part to further the master's business."  *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005).  "[T]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized."  *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).

*B.A. v. United States*, No. 5: 21-CV-106-DCR, 2021 WL 4768248, at *2 (E.D. Ky. Oct. 12, 2021).  Applying this test, this Court and others have consistently found that "a sexual assault is not within the scope of employment because there is no conceivable way that intentionally committing sexual assault can be motivated by a desire to serve the employer."  *Id.* at *3 (collecting cases).  The sexual assault alleged by Greene therefore plainly falls outside the scope of the officers' employment, and any claim predicated upon it must be dismissed.[1]

The remaining intentional torts - including physical assault and battery, excessive restraint, and "abuse of process" - present a closer question.  Nonetheless, under the facts of this case the same result obtains.  Unlike a sexual assault, the physical conduct involved when a prison security guard attempts to bring a non-compliant inmate under control is more likely to be "of the same general nature as that authorized or incidental to the conduct authorized."  *Osborne*, 31 S.W.3d at

---

[1] Greene's claim that the officers intentionally inflicted emotional distress upon him is also subject to dismissal for the same reason, as well as for failure to state a claim because the conduct complained of falls within the traditional torts of assault, battery, and negligence.  *DeLarosa v. United States*, No. CV 5:22-116-DCR, 2022 WL 4280292, at *4 (E.D. Ky. Sept. 15, 2022) (*citing Hall v. City of Williamsburg*, 768 F. App'x 366, 377 (6th Cir. 2019)).

915. Thus not every excessive use of force by a prison guard, even when characterized as a battery or an assault, will necessarily fall outside the scope of guard's employment. *Cf. Majano v. United States*, 545 F. Supp. 2d 136, 145-47 (D.D.C. 2008). But as noted above, under Kentucky law the officer's purpose or motive in engaging in the conduct complained of is critical. *O'Bryan*, 556 F.3d at 383. Here, Greene alleges that the officers removed him from his cell, assaulted him, and filed "trumped-up" disciplinary charges against him, not for any legitimate job-related purpose, but instead with the design to intimidate or retaliate against him for his refusal to drop his complaints against BOP officer Godsbury. Such conduct is in no way performed in furtherance of the missions or functions of the BOP, and therefore was not performed within the scope of employment. *Cf. Wright ex rel. Wright v. United States*, 69 F. Supp. 3d 606, 611 (S.D. Miss. 2014), *judgment entered sub nom. Wright v. United States*, No. 3:13-CV-637TSL-JCG, 2015 WL 12979207 (S.D. Miss. Apr. 9, 2015), *and aff'd*, 639 F. App'x 219 (5th Cir. 2016); *Brooks v. Silva*, No. 7:08-CV-105-KKC, 2009 WL 1211024, at *6 (E.D. Ky. May 1, 2009). These claims therefore also fall outside the scope of the FTCA's waiver in Section 1346(b)(1), and must be dismissed.

Greene also claims negligence by the BOP (both in its investigation of Officer Godsbury and for its hiring, training, and supervision of the four officers involved) and by Salmons (both for her oversight of the application of restraints and her refusal to direct that he be tested for sexual assault). The United States contends that all of these claims are barred by the discretionary function exception to the FTCA. [R. 12-1 at 13-17]

The statute provides that the United States does not waive its sovereign immunity with regard to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (cleaned

6

up). To determine whether the discretionary function applies, courts use a two-pronged test. First, "a court must ask whether the act involves 'an element of judgment or choice.'" *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) (*quoting United States v. Gaubert*, 499 U.S. 315, 322 (1991)). There is no judgment or choice in a government official's conduct when "a statute, regulation, or policy prescribes a specific course of action" because "the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). On the flip side, "when established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

If the conduct at issue does involve an element of judgment, the second inquiry is whether the judgment involved considerations of public policy. *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984). The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323 (cleaned up). But the decisions or conduct protected is not limited to those made by legislators or regulators, as "an agency may rely on internal guidelines rather than on published regulations." *Id*. at 324. Indeed, "operational" conduct by a lower level employee who must decide how best to carry out a broad agency policy is covered: "Discretionary conduct is not confined to the policy or planning level." *Gaubert*, 499 U.S. at 325. After all, "if the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases." *Id*. at 334.

Greene's claims identified above directly implicate the kind of day-to-day decisions made by prison officials and corrections officers when implementing BOP policy. While 18 U.S.C. § 4042(a)(2) and (3) broadly require the BOP to protect and keep safe inmates in its care, "this statute leaves the implementation of these duties to the discretion of BOP officials." *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008). Particularly in light of the deference generally due to officials when they decide how best to carry out the tasks required to maintain safety and security within the four walls of a prison, as well as the narrow construction afforded to any waiver of sovereign immunity, *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986), these claims must be dismissed. *Cf. Santana-Rosa v. United States*, 335 F.3d 39, 43 (1st Cir. 2003) (holding that negligent assignment claim against BOP is barred by discretionary function exception); *West v. United States*, No. 5:17-CV-04241, 2018 WL 3384909, at *9 (S.D.W. Va. June 13, 2018) ("Decisions concerning inmate classification, inmate placement, and allocation of staff involve an element of judgment or choice") (collecting cases), *report and recommendation adopted sub nom. West v. United States*, No. 5:17-CV-04241, 2018 WL 3381418 (S.D.W. Va. July 11, 2018); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("allegedly negligent and reckless employment, supervision and training" of government employees "fall squarely within the discretionary function exception."); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."); *Smith v. United States*, No. 7: 20-CV-94-DCR, 2021 WL 206355, at *5 (E.D. Ky. Jan. 20, 2021) (holding that decisions by BOP officials regarding restraint of an inmate "relate to their exercise of discretion regarding prisoner safety. Accordingly, these decisions fall within the discretionary function exception."), *appeal dismissed,* No. 21-5187, 2021 WL 2222846 (6th Cir. Apr. 2, 2021); *Hatten v. Bledsoe*, No. 1:13-

CV-00209, 2018 WL 6985205, at *11-12 (M.D. Pa. Dec. 21, 2018) (holding that inmate's claims that officers applied restraints in a "negligent, careless, and harmful manner" and of the alleged "lack of supervision concerning the imposition of restraints" fell within the discretionary function exception), *report and recommendation adopted*, No. 1:13-CV-0209, 2019 WL 144962 (M.D. Pa. Jan. 9, 2019), *aff'd*, 782 F. App'x 91 (3d Cir. 2019).

Finally, Greene's remaining claims must be dismissed because he does not allege that he suffered physical injuries as a result of the misconduct alleged. The statutory language pertinent to the FTCA provides that:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in the custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). Greene's allegations – that the officers filed a false disciplinary report against him and that counsel for the government generally provides guidance to prison guards on how to conceal or destroy evidence of an assault on an inmate – do not (and could not plausibly) allege *physical* injury arising directly from that asserted misconduct. *See* [R. 1-1 at 1]; *see also Baldwin v. Brown*, No. CV 18-16213 (RMB), 2019 WL 4187578, at *3 (D.N.J. Sept. 4, 2019) ("Count II, Plaintiff's FTCA claim based on alleged malicious prosecution for false disciplinary reports, fails to state an FTCA claim because Plaintiff does not allege a physical injury resulting from the alleged tort."); *Shorter v. United States*, No. 1: 19-CV-16627-KMW-AMD (Jan. 22, 2019) [R. 9 at 12-13 therein] (dismissing FTCA claims based on negligent investigation of sexual assault because the plaintiff did not allege that she suffered any physical injury as a result of the defendant's failure to investigate), *rev'd on other grounds*, No. 20-2554 (3d Cir. Sept. 1, 2021).

For each of the reasons set forth above, Greene's complaint will be dismissed.

Accordingly, it is **ORDERED** as follows:

9

1. Plaintiff Michael Greene's tendered amended complaint [R. 16] is **STRICKEN** from the record.

2. Greene's Complaint [R. 1] is **DISMISSED** for failure to prosecute and for failure to comply with an Order of the Court.

3. The Motion of the United States of America to dismiss Greene's Complaint [R. 1] is **GRANTED**, and this matter is further **DISMISSED** for the reasons set forth therein.

4. The Court will enter an appropriate Judgment.

5. This matter is **STRICKEN** from the docket.

This 18th day of January, 2023.

Signed By:
*William O. Bertelsman* WOB
United States District Judge